**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                               Case No. 10-20207

RICHARD FABIAN,

    Defendant.
                                                 /

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS**

Defendant Richard Fabian was charged with one count of Possession of Child Pornographic Material under 18 U.S.C. § 2252A(a)(5) after a February 9, 2009 search of Defendant's residence and office pursuant to a warrant yielded "up to one million still images and over 300 movie files depicting the sexual assault and exploitation of minors." (Gov't's Resp. 4.) Defendant has moved to suppress the evidence seized in the February 9 search on the grounds that (1) the warrant was not supported by probable cause, (2) there was not a nexus between the places to be searched and things to be seized, and (3) the information used in finding probable cause was stale. (Def.'s Mot. 2.) Defendant also argues that the good-faith exception to the exclusionary rule does not apply. (*Id.* at 3.) The court held a hearing on the motion on September 8, 2010. For the reasons that follow, the court denies the motion.

**I. BACKGROUND**

The relevant facts of the fifteen-page February 4, 2009 affidavit upon which the warrant was based are as follows. Gerald Morgan pled guilty in federal court to

possession of child pornography and being a felon in possession of a firearm.  (Mot. Ex. A ¶ 6, Aff.)  The investigation of Morgan that led to his conviction revealed an extensive collection of child pornography, including an 8-mm film documenting the sexual assault of a thirteen-year-old girl, "Vicki."  (*Id.* ¶ 8.)  Morgan and another man took part in the assault, and during a proffer that occurred in the investigation of Morgan, Morgan identified that man as Defendant and stated that the video was made in 1992.  (*Id.* ¶¶ 15-16.)  Morgan went on to describe his past relationship with Defendant, which included sexually assaulting children, voyeuristically photographing young women in parks, and exchanging child pornography, and which lasted from at least the early 1980s until at least 1995.  (*Id.* ¶¶ 20-27.)  In a letter to the investigating agent some time after the proffer, Morgan stated his belief that Defendant had tapes and pictures stored at his office, and provided the address of Defendant's old office.  (*Id.* ¶¶ 40-41.)  Morgan also supplied other details about their relationship, including the names of certain child pornography websites that Defendant had shared with him.  (*Id.* ¶ 42.)  Morgan and Defendant's last meeting was in 1995, but they exchanged emails of unknown content two to three years prior to the date of the affidavit.  (*Id.* ¶ 27.)

Apart from his relationship with Morgan, the affidavit describes a 1976 police report documenting a series of incidents in which Defendant indecently exposed himself to young girls, and two other reports stating that in 1984, Defendant produced and distributed child pornography to an undercover Indiana State Trooper.  (*Id.* ¶¶ 28-29.)  The affidavit goes on to discuss the experience and training of some of the investigating officers as well as further steps taken in the investigation of Defendant.  (*Id.* ¶ 52.)

## II. STANDARD

The Fourth Amendment dictates that warrants shall issue only upon a finding of probable cause, and further mandates that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A "totality of the circumstances" test governs whether the affidavit supports a finding of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In reviewing the decision to issue the warrant, the district court undertakes a deferential standard of review. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

Probable cause is defined as "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983) (internal quotation marks and citations omitted). This definition requires the reviewing magistrate to find a fair probability of two related facts. First, there must be a fair probability that evidence of a crime is still in existence. Second, there must be a fair probability that such evidence is located in the place or places specified in the warrant; this latter "fair probability" is sometimes referred to as the "nexus" requirement. *See United States v. Laughton*, 409 F.3d 744, 747-48 (6th Cir. 2005). If a piece of information is sufficiently old that it cannot support a finding of at least one of the above "fair probabilities," then that information is said to be stale.

## III. DISCUSSION

Although Defendant presents the issues of probable cause, nexus, and staleness as distinct ones, in the context of this case the issues in effect reduce to one of staleness; if the information contained in the affidavit was not stale, it is certainly sufficient to support a finding of probable cause under the totality-of-the-circumstances

3

test, and a nexus between the information and Defendant's home and office could be readily found. The good-faith exception to the exclusionary rule must be addressed separately.

## A. The Information Presented in the Affidavit Was Stale

Stale information may not be used in finding probable cause, and the staleness inquiry depends on the circumstances of the case and nature of the crime. *United States v. Hython,* 443 F.3d 480, 485 (6th Cir. 2006)*; United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). In particular, the Sixth Circuit has outlined four factors that are to be considered in determining whether information is stale: 1) the character of the crime, 2) the transience of the defendant, 3) the endurance of the thing to be seized, and 4) the type of place to be searched. *United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006). In applying the factors summarized in *Abboud* in the context of a child pornography case, the Sixth Circuit recently found that the purchase of a one-month subscription to a child pornography website sixteen months before the warrant issued was not stale, and therefore could be considered in making the probable cause determination. *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009). The Court noted in passing that, unlike in the drug trade, where sixteen-month-old contraband is likely to have been moved, consumed, or destroyed, images of child pornography "can have an infinite life span." *Id.* at 378-79.

The Sixth Circuit has similarly upheld other warrants against staleness challenges in child pornography cases. *See United States v. Lewis,* 605 F.3d 395, 402 (6th Cir. 2010) (seven-month-old images not stale); *United States v. Paull*, 551 F.3d 516, 522-23 (6th Cir. 2009) (thirteen-month-old subscription purchase not stale); *United*

4

*States v. Lapsins*, 570 F.3d 758, 767 (6th Cir. 2009) (nine-month-old images not stale where some images only one month old). Other circuit courts have likewise applied longer time frames to find information in child pornography cases to be not stale. *See, e.g.*, *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (three-year-old child pornography subscriptions not stale in part because affidavit noted that child pornography collectors rarely dispose of their collections quickly); *United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997) (ten-month-old child pornography subscription not stale). However, some circuits have rejected older information as stale even in the child pornography context. *See United States v. Prideaux-Wentz,* 543 F.3d 954, 958 (7th Cir. 2008) (finding as stale information that the defendant uploaded images at an unknown date between two and four years prior to the date of the warrant). Although the *Prideaux-Wentz* Court agreed that there should be a longer staleness time frame in the context of a child pornography case, it stated that "there must be some limitation on this principle." *Id.*

*1. Images of Child Pornography*

Courts have recognized two complimentary rationales for why images of child pornography require a longer time period before they are held stale under a Fourth Amendment analysis. First and foremost, images—whether pornographic or not—simply last longer than other forms of contraband that might be consumed, destroyed, or degraded in a shorter time period; this is the third *Abboud* factor. *See Frechette*, 583 F.3d at 379. Photographs and other printed images may last for decades, or even for centuries if properly cared for and preserved. It is common knowledge that family and artistic photographs may be passed down from generation to

5

generation, and may remain identifiable for years if stored on a bookshelf or in a desk drawer, with no particular care necessary. Similarly, images on electronic media require little maintenance, can last for years, and may be recoverable and readable by a forensic analyst even if deleted from the media. *See id.* at 378-79; *United States v. Terry*, 522 F.3d 645, 650 n.2 (6th Cir. 2008). In this way, pictures and images last significantly longer than other types of evidence, such as drugs, which may be consumed, or clothing containing incriminating biological evidence, which may be washed.

Second, courts have observed that collectors of child pornography typically retain and foster their collections for long periods of time; this is the first *Abboud* factor. *E.g.*, *Frechette*, 583 F.3d at 378; *Prideaux-Wentz*, 543 F.3d at 958. While a non-pornographic electronic or printed image may have a long staleness life span even if given little attention, images of child pornography are likely to be looked after, and therefore warrant an even longer time frame in the staleness inquiry.

Here, there is good reason to believe that the images in question—those that Fabian and Morgan exchanged and the 8-mm film—were still in existence somewhere, especially because they were images of child pornography. At the time the warrant issued, there was a "fair probability" that evidence of a crime was still in existence. But that is only the first part of the analysis.

### 2. Nexus

Even if the contraband or evidence in question is of such a kind that it warrants a longer time line in the staleness analysis, it nevertheless may be stale if the information linking the evidence to the place to be searched is stale. The second and

fourth *Abboud* factors enter into the equation: the transience of Defendant, and character of the place to be searched.  Courts, in discussing child pornography crimes, have observed that collectors of child pornography prefer to keep their collections in secure, private locations, such as a home or office.  *E.g.*, *Frechette*, 583 F.3d at 379; *Paull*, 551 F.3d at 522; *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2005).  And because these locations are more akin to a "secure operational base" than to a "mere criminal forum of convenience," see *Abboud*, 438 F.3d at 573-74, collectors may retain their collections for long periods of time.  Accordingly, a longer time frame may be warranted in child pornography cases not only because of the nature of the contraband, but also because of the types of locations in which that contraband is frequently stored.

      The Sixth Circuit has recognized these principles, but has neither laid down a bright-line rule distinguishing stale information from that which is not, nor ruled that the staleness doctrine does not apply to child pornography crimes as a matter of law.  Thus, the court must look to the circumstances of the case to determine whether the information is stale.  *Paull*, 551 F.3d at 522.  In this case, the most recent information in the affidavit directly tying Defendant to the production and possession of child pornography dated back to 1992—seventeen years before the warrant issued.  The affidavit described the last face-to-face meeting between Defendant and Morgan in 1995, and email correspondence that may have been as recent as 2007, but reveals nothing about the content of those interactions.  While the Government correctly noted at the hearing on this motion that a magistrate may make reasonable inferences in evaluating a warrant application, see *Prideaux-Wentz*, 543 F.3d at 961, the mere fact of a meeting or an email—with no inkling as to the content of those communications—is

7

not the type of sufficiently descriptive information that may "freshen" what is otherwise seventeen-year-old information. *See Prideaux-Wentz*, 543 F.3d at 958 (citing *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005)).

Indeed, the time frame in question here—seventeen years—is an order of magnitude greater than those discussed in recent Sixth Circuit cases. In addition, the *Abboud* factors cut in opposite directions: the character of the crime, the enduring nature of pornography collections, and the fact that a home and office were to be searched favors a longer staleness time frame. However, while Defendant did not appear to be transient or "nomadic," his office had moved between his last meeting with Morgan and the execution of the warrant, and Morgan provided an old address, suggesting the absence of a nexus between the evidence sought and the places to be searched. (Mot. Ex. A ¶ 41.) Morgan's error is illustrative of the staleness of the information regarding where the evidence of the crime could be found, and of the very purpose of the staleness doctrine: when a person moves a home or office, it is more difficult to tie certain contraband to a specific location. Even when dealing with child pornography, it is very difficult to find a "fair probability" that any particular chattel will be found in a particular place seventeen years after it was once believed to be there.

Over the span of seventeen years, a subject of a search warrant may have moved a collection of child pornography, or destroyed it, or given it away, thereby relinquishing a former lifestyle. In this case, Defendant did in fact move his office, and there was no direct information contained in the warrant to suggest that Defendant had possessed child pornography within the past seventeen years. Despite the longer staleness time frame that is applicable in this case, the court is in agreement with the

Seventh Circuit panel that "there must be some limitation on this principle." *Prideaux-Wentz,* 543 F.3d at 958. Under these facts, the information suggesting that Defendant had child pornography stored at his home and office was stale, and therefore insufficient to support a finding of probable cause.

**B. The Good-Faith Exception to Suppression Applies and the Evidence Seized Is Admissible**

*United States v. Leon*, 468 U.S. 897, 926 (1984), held that even if evidence was seized pursuant to a warrant unsupported by probable cause, the exclusionary rule does not apply if an objectively reasonable officer could have relied on the warrant in good faith in executing the search. In determining whether reliance was objectively reasonable, the court may examine only the four corners of the affidavit and materials submitted in the application for the warrant. *Hython*, 443 F.3d at 487-88. The "reliance" inquiry is simply whether an objectively reasonable officer would have believed that the warrant was properly issued. *Laughton*, 409 F.3d at 750-51. An officer's training and experience is relevant to whether his reliance on the affidavit was objectively reasonable. *See Paull*, 551 F.3d at 523; *see also United States v. Watzman*, 486 F.3d 1004, 1008-09 (7th Cir. 2007).

In this case, Affiant Detective Sergeant John Figurski cited in the affidavit his own experience investigating child pornography offenses: "Affiant is a Detective Sergeant with the Michigan State Police currently assigned to the Adrian Post. Affiant has 18 years of law enforcement experience which includes criminal investigations involving the sexual assaults of children and the possession of child sexual abusive materials." (Mot. Ex. A ¶ 1.) He also stated that he consulted with other law enforcement personnel, including Detective Sergeant Jay Poupard from the Michigan State Police Computer

9

Crimes Unit. The affidavit recited, briefly, the fact of Poupard's training and experience and proceeded to discuss how Poupard had informed Figurski:

> [Y]our affiant spoke to D/Sgt Jay Poupard from the Michigan State Police Computer Crimes Unit. D/Sgt Poupard advised that based upon his training and experience, and the experience of other law enforcement personnel, individuals who possess/manufacture child pornography/erotica display a very compulsive, repetitive and predictable pattern of behavior. Further, individuals involved in child pornography typically retain these items for many years. These behavioral characteristics are displayed so frequently within this population of individuals that specially trained and experienced law enforcement officers, psychologist, [sic] and psychiatrists may predict, with some certainty, the existence and possibly the location, of certain kinds of evidence based on a full and complete understanding of these behavioral patterns.

(*Id.* ¶ 43.) Although the recitation of Poupard's credentials could have been more complete, the information provided by Poupard in the subsequent paragraphs—including his knowledge of the patterns of behavior of child pornography collectors, and particularly of the difficulties involved in searching computers and other devices for data—is indicative of his training and experience. (*Id.* ¶¶ 48, 50, 52.) An objectively reasonable officer could rely on these statements of officers with experience investigating child pornography crimes in executing the warrant even though the information in it was stale, because he could have reasonably believed that, in child pornography cases, information that was seventeen or more years old was not stale and therefore the warrant was properly issued.

Because courts have repeatedly stated that a longer staleness time frame is appropriate in child pornography cases, courts have been particularly forgiving to officers who rely on a warrant in good faith in such cases, even if the information that supported a finding of probable cause in those cases was later found to be stale. *See Frechette*, 583 F.3d at 381 (citing *Leon*, 468 U.S. at 922-23) ("[E]ven if the magistrate

judge did not have a substantial basis for finding probable cause, suppression of the evidence is nevertheless inappropriate because the agents relied on the search warrant in good faith."); *Paull*, 551 F.3d at 523 ("[E]ven if the affidavit did not support probable cause, it fits comfortably within the *Leon* good-faith exception . . . ."); *Prideaux-Wentz*, 543 F.3d at 959-62.

There are several factors that favor a finding that an objectively reasonable officer could have relied on the warrant in good faith. An officer could have thought that the recent communications in 2006 and 2007 "freshened" the stale information, even though this court has found that they could not do so. Defendant raises no *Franks v. Delaware*, 438 U.S. 154 (1978), allegation that the affiant or any officer included false information in the affidavit. The tailored affidavit documents the investigation of Morgan, which included seizure of child pornography, and therefore the executing officer, based on the affidavit, knew that the child pornography was in existence, because it had been seen by law enforcement in connection with Morgan's arrest and prosecution. This is not a case where the officer was relying upon mere hearsay from an informant, but one where law enforcement's own experience—captured in the affidavit—corroborated Morgan's statements. The affidavit also details the extensive relationship between Morgan and Defendant. That relationship supplies the basis of Morgan's knowledge, and the 1984 police report of Defendant's attempted distribution of child pornography corroborates the hypothesis that Defendant at some time possessed child pornography. The inclusion of these interlocking details in the affidavit further supports a finding that an officer could rely on the warrant in good faith.

Defendant argues in his brief (and contended at the hearing) that the good-faith exception does not apply because the magistrate failed to act in a neutral and detached manner, and also because the affidavit was "bare bones," that is, it lacked indicia of probable cause. (Def.'s Br. at 15-17.) However, Defendant presents no evidence apart from his assertion that the information was stale to support his allegation that the magistrate failed to act in a neutral and detached manner.

With respect to Defendant's second assertion, the affidavit in this case was certainly not a "bare bones" affidavit that could not support objectively reasonable reliance—the affidavit contained detailed, interlocking information, albeit stale information, regarding Defendant's activities from knowledgeable sources. A "bare bones" affidavit "contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . . .'" *Laughton*, 409 F.3d at 748 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). For example, in *Weaver* the Court reversed a denial of a motion to suppress on the basis that the affidavit was "bare bones" where the "preprinted affidavit was composed of boilerplate text with a few open spaces for additional information." *Weaver*, 99 F.3d at 1375, 1379-81. In *United States v. West*, 520 F.3d 604 (6th Cir. 2008), the Sixth Circuit also reversed a denial of a motion to suppress in a felon-in-possession case where the warrant for West was issued based on the suspicion of his connection to the disappearance of his ex-girlfriend. 520 F.3d at 606-07. The Court held that the "bare bones" affidavit "[was] bereft of any facts that suggest any connection between [the ex-girlfriend's] disappearance and any evidence

likely to be found at the residence or in the van. Instead, the affidavit [was] based on unsubstantiated conclusions and unreliable hearsay . . . ." *Id.* at 610.

In this case, the affidavit offered in support of the search warrant was not composed of boilerplate language; it did not contain mere "suspicions, beliefs, or conclusions"; it did not lack any facts regarding the veracity, reliability, or basis of knowledge of Morgan that connected child pornography to Defendant, his home, and office. Rather, the affidavit contained detailed information regarding Defendant and his past activities, from which a court could have found (had it not been stale) probable cause under the totality of the circumstances. While the information in the affidavit was stale because of its age, the affidavit containing it tied child pornography to Defendant and Defendant's home and office, and therefore this is not a case involving the type of "bare bones" affidavit found in *Weaver* and *West*.

## IV. CONCLUSION

The information presented in the application for the warrant to the magistrate linking evidence of Defendant's possession of child pornography to his home and office was stale, and without the stale information, the warrant was unsupported by probable cause. However, the executing officers' reliance on the warrant was objectively reasonable, and so the evidence seized in the February 9 search is admissible under *Leon*'s good-faith exception to the exclusionary rule.

Accordingly, IT IS ORDERED that Defendant's Motion to Suppress [Dkt. # 13] is DENIED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: September 29, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 29, 2010, by electronic and/or ordinary mail.

        S/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522